CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 2 5 2010
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

LARRY DARNELL COLEMAN,

    Plaintiff,

v.

DR. UZMA ALI,

    Defendant.

Case No. 7:10CV00255

MEMORANDUM OPINION

By: Glen E. Conrad
United States District Judge

Plaintiff Larry Darnell Coleman, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Coleman alleges that the defendant, a jail physician, failed to provide him with adequate medical care for a back injury, in violation of his constitutional rights. Upon review of the record, the court finds that the complaint must be dismissed.

## Background

Coleman's submissions allege the following sequence of events on which his claims are based. Coleman is an inmate at the Western Virginia Regional Jail (the jail) in Salem, Virginia. On April 11, 2010, he fell from his bunk and injured his back. Jail officials transported him to a local hospital, where he was examined by a doctor, who prescribed several medications. When Coleman was returned to the jail, he was placed in medical segregation and received only a generic version of Motrin for his pain. The pain got worse. A physician's assistant performed a follow up examination on April 13, 2010. The X-ray of Coleman's back was normal, but the medical staff decided to keep him in medical segregation until he felt better and a bottom bunk was available.

Coleman was summoned to see the doctor on April 16, 2010. When an officer came to escort him, Coleman advised the officer that he was unable to walk because of pain and numbness in his legs and requested a wheelchair. The officer told him that if he did not walk to the appointment, the record would indicate that he was refusing medical treatment. Coleman did

not walk to the medical unit and, thereafter, his medication was terminated. He wrote a request on April 17, 2010, asking for medication. The response indicated if he did not keep appointments, the medical staff could not provide treatment. On April 20, Coleman requested a grievance form, but a ranking officer came to visit him and told him that no grievance would be necessary, because he would help Coleman resolve the issue. Coleman's back pain continued, leaving him bedridden and preventing him from sleeping. He was not provided with a cane, a walker, a wheelchair or rehabilitation of any kind.

Dr. Ali examined Coleman on April 22, 2010. After the inmate complained of continued pain and inability to stand, the doctor ordered an MRI. Medical staff summoned Coleman to the medical department again on April 27 and 28, 2010. Both times, when Coleman indicated that he could not walk to the appointment, officials reported that he had refused medical treatment. Coleman was examined by Dr. Henderson at the prison medical department on May 3, 2010. From Coleman's record, the doctor believed that the inmate was receiving the medications prescribed at the hospital. After Coleman told him that he was not receiving these medications, the doctor represcribed them. The next day, the medical staff began providing Coleman with a different medication instead.

Coleman underwent an MRI on May 12, 2010. Dr. Ali examined him the next day and advised him that the MRI results were normal, that Coleman had no need for a wheelchair, and that he needed to do stretching exercises and start to walk more. On May 13, 2010, Coleman filed a grievance, complaining that the medication was upsetting his stomach.

Coleman was transferred back to the general population on May 20, 2010, still suffering from "extreme" back pain. He claims that he was only receiving one of two medications that the doctor had prescribed for pain. Coleman also felt that the medication was not working, but officers told him that if he did not take it, he would not receive any other medication. He filed a request for medical evaluation on May 24, complaining again that the medication was upsetting his stomach. On June 2, 2010, an officer responded to Coleman's grievance about his medical

treatment, stating that because he was complaining about the type of medical care he was receiving, the issue was not grievable.

Coleman also complains generally about the manner in which jail officials handled his request forms and grievance forms. He complains that officers failed to file his request forms on occasion, responses were often late, and officers frustrated his attempts to appeal the grievance response.

In his complaint, Coleman sues Dr. Ali. As relief, he seeks compensatory damages for inadequate medical treatment and rehabilitation, which may affect his future prospects for employment.

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." The factual allegations, taken in the light most favorable to the plaintiff, must be sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). After review of Coleman's allegations as amended, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

To prove that his course of medical treatment amounted to a constitutional violation, an inmate must show that prison officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (applying Eighth Amendment to convicted felon's medical claim).[1]

---

[1] It is not clear from his pleadings whether Coleman was a pretrial detainee or a convicted felon at the time of the events alleged in the complaint. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth

> A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention or if denial of or a delay in treatment causes, or threatens to cause, the inmate to suffer a life-long handicap or permanent loss.

Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (internal quotations omitted).

To prove deliberate indifference, the inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed and that he drew that inference. Farmer v. Brennan, 511 U.S. 825, 847 (1994). On the other hand, a claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Negligent misdiagnosis or other instances of medical malpractice do not present constitutional deprivations. Estelle, 429 U.S. at 105-106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106.

To bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Prison personnel may rightfully rely on the opinion of the medical staff as to the proper course of treatment. Id. at 855.

It is clear that Dr. Ali and other medical staff at the jail did not ignore Coleman's back problem or deny him treatment. Immediately after his injury, he was sent to an outside hospital and received X-rays. Jail staff then provided him with medication, an MRI, housing in the

---

Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the constitutional principles applied via the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs).

medical segregation unit, a recommendation for a lower bunk, and advice that he should do exercises and walk more. Coleman clearly believes that his back pain called for different medication,[2] more frequent consultations with the doctor, transport to medical visits in a wheelchair, and more rehabilitative treatment than he received at the jail. These allegations, however, indicate a disagreement between himself and the jail's medical staff, and perhaps between Dr. Ali and the other doctors who examined Coleman and prescribed different medications. Such disagreements with the course of treatment do not give rise to any claim actionable under § 1983. Wright, 766 F.2d at 849.

Based on their knowledge of Coleman's injury and symptoms, Dr. Ali or other members of the medical staff decided that Coleman could walk, and even needed to walk, to his appointments. Similarly, Dr. Ali made judgments about Coleman's need for medication.[3] The court cannot second guess such medical judgments. Russell, 528 F.2d at 319. To the extent that Coleman believes that these judgments were wrong or constituted inadequate medical treatment for his condition, he states nothing more than claims of medical negligence, which are not sufficient to state an Eighth Amendment claim. Estelle, 429 U.S. at 106. Because Coleman's submissions fail to present factual allegations that state a plausible constitutional claim regarding his course of medical treatment, these claims must be dismissed without prejudice, pursuant to § 1915A(b)(1).

Coleman's complaints about the way jail officials handle inmate grievances also fail to state any claim actionable under § 1983. Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d

---

[2] Coleman's complaint that the medications provided sometimes upset his stomach are insufficient to support an inference that this problem presented a serious medical need. Moreover, Coleman does not allege any facts indicating that Dr. Ali knew of his complaints about stomach upset. The doctor cannot be held liable for failing to remedy a problem of which he was not made aware. Farmer, 511 U.S. at 847.

[3] The court notes that Coleman's complaint does not allege any facts indicating that Dr. Ali was aware of any periods when Coleman was not receiving the medications as prescribed or that Coleman took any steps to make the doctor aware of this fact.

728, 729 (8th Cir. 1991). Accordingly, a prison official's failure to comply with the provisions of an established grievance procedure is not actionable under §1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Azeez v. De Robertis, 568 F.Supp. 8, 9-11 (N.D.Ill. 1982). Thus, Coleman can state no § 1983 claim regarding his dissatisfaction with his administrative remedy proceedings.

## Conclusion

For the stated reasons, the court concludes that plaintiff's submissions fail to present factual allegations stating any claim actionable under § 1983. Therefore, the action must be dismissed without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 25th day of June, 2010.

/s/ _____
United States District Judge